FILED

04/28/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0162

DA 19-0162

## IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 107

ZACHARY SCOTT BUCKLES, deceased, by and
through his personal representative, NICOLE R.
BUCKLES, and NICOLE R. BUCKLES, personal
representative, on behalf of the heirs of ZACHARY
SCOTT BUCKLES,

        Plaintiffs and Appellants,

   v.

CONTINENTAL RESOURCES, INC., an Oklahoma
corporation, BH FLOWTEST, INC., a Montana
Corporation, BLACK ROCK TESTING, INC., a Montana
Corporation, JANSON PALMER, d/b/a BLACK GOLD
TESTING, and JOHN DOES I-V,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Seventh Judicial District,
                    In and For the County of Richland, Cause No. DV 2015-014
                    Honorable Olivia C. Rieger, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                A. Clifford Edwards, Roger W. Frickle, Edwards, Frickle & Culver,
                Billings, Montana

                Robert J. Savage, Savage Law Firm, Sidney, Montana

        For Appellee BH Flowtest, Inc.:

                Leonard H. Smith, Christopher C. Stoneback, David F. Knobel,
                Monique P. Voigt, Crowley Fleck PLLP, Billings, Montana

        For Appellee Black Rock Testing, Inc.:

                Kelly J.C. Gallinger, Aaron M. Dunn, Brown Law Firm, P.C., Billings,
                Montana

For Appellee Continental Resources, Inc.:

W. Scott Mitchell, Kyle A. Gray, Holland & Hart LLP, Billings, Montana

Submitted on Briefs:  November 13, 2019

Decided:  April 28, 2020

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Nicole R. Buckles ("Buckles"), as personal representative of the estate of Zachary Scott Buckles, appeals the order of the Seventh Judicial District Court granting Defendant Continental Resources, Inc.'s ("Continental") motion to dismiss for lack of specific personal jurisdiction. Because Buckles raised sufficient facts to withstand a motion to dismiss, we reverse and remand for further development of the record.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 This case returns to the Court for the second time on appeal. *See Buckles v. Cont'l Res. Inc.*, 2017 MT 235, 388 Mont. 517, 402 P.3d 1213 ("*Buckles I*"). We restate the facts applicable to the issue presented.

¶3 Zachary Scott Buckles was born and raised in Glasgow, Montana. This action arises from his tragic death on April 28, 2014, at a North Dakota oil well site owned by Defendant Continental.

¶4 Continental is an Oklahoma corporation authorized to do business in Montana since 1990. Continental has significant operations in Montana, the extent of which is detailed in our Opinion in *Buckles I*. Relevant here, Continental maintains a field office in Sidney, Montana, which is responsible for overseeing the operation of the oil and gas well site and tank battery in the Bakken region of North Dakota where Zachary died. The District Court referred to this site as the Columbus Federal/Tallahassee complex, and we do so here. The Columbus Federal/Tallahassee complex consists of twenty tanks that support five oil wells that produce crude oil and natural gas.

3

¶5    In June 2011, Continental entered into a Master Services Agreement ("MSA") with BH Flowtest, Inc.,[1] a Montana corporation, to perform certain services at the Columbus Federal/Tallahassee complex.  The MSA provided: "It is expressly understood that Contractor [BH Flowtest] is an independent contractor and that neither Contractor nor Contractor's principals, partners, employees, or subcontractors are servants, agents, or employees of Continental."  The agreement further provided: "Contractor warrants that it is an expert in the work it will perform, that its employees and agents have been trained to follow all applicable laws, rules, and regulations and work safely, and that all of its equipment has been thoroughly tested and inspected and is safe, sufficient and free of any defects[.]"  The MSA was signed by BH Flowtest's owner and a Continental representative. Continental avers—and Buckles does not dispute—that Continental signed the MSA from its offices in Enid, Oklahoma.

¶6    Pursuant to the MSA, BH Flowtest agreed to perform oil gauging, or "flow-testing" services.  Flow-testing consists of monitoring the flow rate of oil from a newly producing well into a holding tank.  The gauger takes hourly manual readings of the level of crude oil in those tanks at an oil tank battery; checks for leaks; adjusts pumping system controls to hit the desired flow rates; makes sure the oil leaves, by truck or by pipeline; and ensures that "everything ran smooth [sic]."  BH Flowtest subcontracted the flow-testing to Black Rock Testing, Inc., which in turn subcontracted the flow-testing to Janson Palmer, doing business as Black Gold Testing.  Palmer in turn subcontracted with his childhood

---

[1] BH Flowtest is identified in the MSA as a limited liability company but referred to in briefing as BH Flowtest, Inc. and BH Flow Testing, Inc.

4

friend Zachary Buckles, doing business as Dozer Testing, Inc. There is no dispute that the work Zachary performed was among the services encompassed by the MSA.

¶7 In January 2014, Zachary and Palmer traveled to the Bakken to perform manual tank-gauging of crude oil production tanks. They worked at various well sites in North Dakota before arriving at Continental's Columbus Federal/Tallahassee complex in mid-March. Zachary and Palmer lived together in a trailer near the well site and alternated twelve-hour shifts, with Palmer gauging during the day and Zachary gauging at night. They sent daily "flow charts" documenting hourly production at the wells to Continental's Sidney office. On April 28, 2014, Zachary died at the Columbus Federal/Tallahassee complex 2-16H well site, allegedly from exposure to high levels of hydrocarbon vapors while manually gauging tanks. He was nineteen years old.

¶8 Buckles filed suit against Continental, BH Flowtest, Black Rock, and Black Gold in Montana's Seventh Judicial District Court, Richland County, alleging that Defendants are liable for Zachary's death. Specifically, Buckles asserted that Defendants had a legal duty under state and federal law to maintain a safe and secure oil well site and that they breached their duty by allowing an inherently dangerous and unsafe well site to be operated without adequate or appropriate air monitoring equipment in place for the tank gauging activities. Continental filed a motion to dismiss for lack of personal jurisdiction. After full briefing by the parties, the District Court concluded that it lacked both general and specific personal jurisdiction and granted Continental's motion to dismiss. Buckles appealed. We agreed with the District Court that Continental was not "at home" in Montana and therefore was not subject to general personal jurisdiction, *Buckles I*, ¶ 14, but reversed and remanded to

5

the District Court "to conduct an evidentiary hearing for the purpose of determining whether Continental is subject to specific personal jurisdiction in Montana." *Buckles I*, ¶ 29.

¶9 On remand, the District Court allowed additional jurisdictional discovery and held a jurisdictional hearing, at which the parties presented deposition testimony from numerous witnesses, including former and current Continental employees and Janson Palmer. On January 14, 2019, the court entered its Findings of Fact, Conclusions of Law and Order on Continental Resources, Inc.'s Motion to Dismiss – Specific Personal Jurisdiction, granting Continental's motion to dismiss. The court determined that Continental is not subject to specific personal jurisdiction because the events leading to Zachary's death do not satisfy Montana's long-arm statute, M. R. Civ. P. 4(b)(1), and because exercising jurisdiction over Continental would violate the Due Process Clause of the United States Constitution.[2]

## STANDARDS OF REVIEW

¶10 This Court reviews de novo a district court's decision on a motion to dismiss for lack of personal jurisdiction. *Buckles I*, ¶ 9 (quotations and citations omitted). If the district court conducts a preliminary hearing and makes factual findings necessary to the determination of personal jurisdiction, we review those findings of fact for clear error.

---

[2] Pending before the Court is another appeal, by Continental's co-defendants BH Flowtest and Black Rock Testing, of the District Court's separate order ruling that Montana law, rather than North Dakota law, applies to Buckles's claims in this case. *Buckles v. Continental Resources, Inc.*, *et al.*, S. Ct. No. DA 19-0546. We consider the appeals separately, on the discrete issues the parties raise in each case. For purposes of this appeal, we assume Montana law applies. The issue here is not each state's doctrinal law or sovereign interests, Dissent, ¶¶ 49, 53-55, but whether Continental's case-linked activities related to its alleged Montana-based control over work performed on its oil wells require it to defend Buckles's claims in a Montana court.

6

*Tackett v. Duncan*, 2014 MT 253, ¶ 16, 376 Mont. 348, 334 P.3d 920 (citation omitted). We review a district court's conclusions of law to determine whether the conclusions are correct. *Buckles I*, ¶ 9 (citation omitted).

## DISCUSSION

¶11 "Personal jurisdiction—a court's power over the parties in a proceeding—may be general (all-purpose) or specific (case-linked)." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 2019 MT 115, ¶ 8, 395 Mont. 478, 443 P.3d 407, *cert. granted*, No. 19-368 (U.S. Jan. 17, 2020). "Specific personal jurisdiction exists when the suit itself 'arises from the specific circumstances set forth in Montana's long-arm statute, M. R. Civ. P. 4(b)(1).'" *Ford Motor Co.*, ¶ 9 (citing *Buckles I*, ¶ 15). A state court's ability to exercise specific personal jurisdiction depends on the "relationship among the defendant, the forum, and the litigation." *Ford Motor Co.*, ¶ 9 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 133, 134 S. Ct. 746, 758 (2014)). This relationship must arise out of contacts that the defendant itself created with the forum. *Ford Motor Co.*, ¶ 9; *Tackett*, ¶ 32. Stated another way, in order for a state court to exercise specific jurisdiction, both the defendant and the underlying controversy must be "appropriately affiliated" with Montana. *Ford Motor Co.*, ¶ 9. A defendant's general connections with the forum state are not enough. Rather, "the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Buckles I*, ¶ 17 (quoting *Bristol-Myers Squibb Co. v. Superior Court*, __U.S.__, 137 S. Ct. 1773, 1786 (2017) (internal quotations omitted)). "'Specific' or 'case-linked' jurisdiction depends on an affiliation between the forum and the underlying controversy, principally an activity or occurrence that takes place in the forum state and is therefore subject to the

7

state's regulation." *Tackett*, ¶ 19 (quoting *Walden v. Fiore*, 571 U.S. 277, 283 n.6, 134 S. Ct. 1115, 1121 n.6 (2014)). Finally, a defendant's relationship with a third party, standing alone, is an insufficient ground for specific jurisdiction. *Buckles I*, ¶ 20 (citation omitted); *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 (citation omitted). In sum, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780.

¶12     To determine whether Montana courts may exercise specific personal jurisdiction over a nonresident defendant, we first determine whether personal jurisdiction exists under our long-arm statute, codified at M. R. Civ. P. 4(b)(1). *Ford Motor Co.*, ¶ 10; *Buckles I*, ¶ 11. If not, we must decline jurisdiction, and our analysis ends. *Simmons v. State*, 206 Mont. 264, 272, 670 P.2d 1372, 1376 (1983). If, however, the defendant has done some act that potentially confers jurisdiction under the long-arm statute, we examine whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice embodied in the Due Process Clause of the Fourteenth Amendment. *Simmons*, 206 Mont. at 272, 670 P.2d at 1376.

¶13     Montana's long-arm statute provides in pertinent part:

> [A]ny person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:
>
> (A) the transaction of any business within Montana;
>
> (B) the commission of any act resulting in accrual within Montana of a tort action;

8

> (C) the ownership, use, or possession of any property, or of any interest, therein situated within Montana[.]

M. R. Civ. P. 4(b)(1). Buckles asserts that "Continental's conduct[] unequivocally falls directly within the parameters of subsection (A), (B), and (C)" of the long-arm statute. Concluding that subsection (A) applies to the claims Buckles raises, we do not consider either (B) or (C).

¶14 Under M. R. Civ. P. 4(b)(1)(A), a Montana court may "exert long-arm jurisdiction over any person if the claim arises out of that person's transaction of business within the state." *Grizzly Sec. Armored Express, Inc. v. Armored Group, LLC*, 2011 MT 128, ¶ 23, 360 Mont. 517, 255 P.3d 143. "Jurisdiction comports with M. R. Civ. P. 4(b)(1)(A) if the nonresident business conducts 'substantial' business activity in the state" from which the claim arises. *Grizzly Sec.*, ¶ 23 (quoting *Bunch v. Lancair Int'l, Inc.*, 2009 MT 29, ¶ 18, 349 Mont. 144, 202 P.3d 784). As we stated in *Buckles I*, ¶ 20, "The dispositive question, as it pertains to specific personal jurisdiction over Continental, is whether a relationship exists 'among [] [Continental], the forum, *and the litigation*,' . . . not just with Continental's contacts with Montana in general." (Citations omitted.)

¶15 It is undisputed that Continental conducts substantial business activities in Montana. Continental maintains, however, that its only suit-related Montana business transaction is the MSA with BH Flowtest. It argues that our decision in *Cimmaron Corp. v. Smith*, 2003 MT 73, 315 Mont. 1, 67 P.3d 258, precludes us from exercising specific jurisdiction over Continental on the basis of the MSA.

9

¶16 In *Cimmaron*, ¶ 14, we reiterated our holding in *Edsall Construction Co., Inc. v. Robinson* that "a non-resident does not subject [itself] to the jurisdiction of Montana by merely entering into a contract with a resident of Montana." 246 Mont. 378, 382, 804 P.2d 1039, 1042 (1991). We affirmed the district court's ruling that it lacked personal jurisdiction over Pennsylvania defendants whose sole contacts with Montana were the agreements they entered with the Montana-based plaintiff. *Cimmaron*, ¶¶ 15, 21. We further observed that under the agreement in that case, the defendants were required to perform services in Pennsylvania, not in Montana, and that each of the plaintiff's claims pertained to actions the defendants took, or failed to take, in Pennsylvania. *Cimmaron*, ¶ 15.

¶17 Like the contract at issue in *Cimmaron*, the MSA is a contract Continental entered with a Montana resident for the performance of services outside Montana. And like the nonresident defendants in *Cimmaron*, Continental did not subject itself to this State's jurisdiction simply by entering into the MSA with a Montana entity for tank gauging to be performed in North Dakota. Continental did not have a contract with Zachary; the parties to the MSA are two co-defendants, Continental and BH Flowtest. A defendant's relationship with a third party (BH Flowtest), standing alone, is an insufficient basis for jurisdiction. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 (quoting *Walden*, 571 U.S. at 286, 134 S. Ct. at 1123); *Buckles I*, ¶ 20; *Tackett*, ¶ 33.

¶18 The MSA's connection to Zachary is through three additional subcontracts, leading to the work he performed in North Dakota. But the MSA—which made BH Flowtest and its subcontractors responsible for all tank-gauging services and related

10

safety measures—does not contractually connect Zachary's death, Continental, and Montana. We agree with Continental that its MSA with BH Flowtest is not sufficient by itself to confer long-arm jurisdiction over Continental in this case pursuant to M. R. Civ. P. 4(b)(1)(A).

¶19 Buckles argues nonetheless that, because Continental's Sidney, Montana office oversees the Columbus Federal/Tallahassee complex where Zachary died, there is a relationship between Montana, Continental, and this litigation sufficient to subject Continental to the exercise of specific jurisdiction.

¶20 The District Court found that Continental's Sidney, Montana office exercises "supervisory control" over the Columbus Federal/Tallahassee complex: it manages production and daily operations at the well site; it has the authority to set flow rates; and it directs the work that subcontractors are to perform at the well site. The court also found that Continental contracts out certain elements of work for which its subcontractors are responsible. For example, each individual tank-gauger—all of whom are independent subcontractors—sets the flow rate in practice; subcontractors must procure their own safety equipment; contractors are not included in the Sidney, Montana monthly safety trainings held for employees; Continental does not train independent contractors; and Continental expects that subcontractors acquire on-the-job training necessary to perform their work.

¶21 As the owner and operator of the Columbus Federal/Tallahassee complex, Continental generally is not liable for any torts committed by its independent contractors. *Beckman v. Butte-Silver Bow County*, 2000 MT 112, ¶ 12, 299 Mont. 389, 1 P.3d 348. "Exceptions to this rule, which create vicarious liability for the employer, arise when

11

(1) there is a non-delegable duty based on contract; (2) the activity is inherently or intrinsically dangerous; or (3) the general contractor negligently exercises control reserved over a subcontractor's work." *Stricker v. Blaine Cty.*, 2019 MT 280, ¶ 12, 398 Mont. 43, 453 P.3d 897 (citing *Beckman*, ¶ 12). We held in *Beckman* that trenching activities on a worksite are inherently dangerous because workers are exposed to the risk of being buried if the operations are not safely conducted, which "requires the implementation of special precautions." *Beckman*, ¶¶ 23-24. Though such precautions may be well-recognized in the construction industry, they demand "special knowledge and, when not followed or properly applied, may result in instantaneous death to the workers." *Beckman*, ¶¶ 24-25.

¶22 Continental did not dispute that safety concerns are paramount in the oil and gas industry and that it took substantial precautions to deal with safety risks, including those presented by hydrocarbon vapors. Russell Atkins, Continental's production manager for the Bakken area, testified that Continental ensured that contractors complied with basic safety requirements. Atkins said that Continental would assure that both employees and contractors had the required Personal Protective Equipment. Although the contractors were not included in the monthly safety meetings, "they had to follow certain guidelines that we made sure they did." Testimony showed that Continental retained ultimate authority over the well site and that it could shut down the operation immediately if one of its employees observed something unsafe. Dusty Grosulak, Continental's Northern region health and safety coordinator, testified that he had, at times, conducted spot inspections or examinations and looked at the safety practices of subcontractors on Continental's properties. He acknowledged that he had authority to shut an operation down if he saw

12

unsafe practices being conducted by a contractor. Atkins also agreed that if a contractor was not following Continental's guidelines, he had the ability "to fire them on the spot[.]"

¶23 Other Continental representatives confirmed that, though they did not supervise the company's subcontractors, if they were visiting a well site and observed a contractor who was not following safety guidelines, they would give direction. Clint Dunn, who worked as a lease operator for Continental at the time of Zachary's death, testified that he checked the equipment at the subject well site daily as part of his regular North Dakota route. Dunn would check for leaks and any other safety hazards and would make sure the equipment was functioning properly. Though Dunn never saw Zachary (who worked at night), he did see Janson Palmer—long enough to say hello, ask if there were any problems, and "get numbers" from him. Dunn confirmed that it was company policy that everyone working on a well site would carry a gas monitor. He testified that if he saw a contractor doing something unsafe while he was visiting a site, he would stop the unsafe activity and contact his foreman for further action.

¶24 We noted in *Buckles I*, ¶ 28, that M. R. Civ. P. 12(i) allows a court to defer until trial ruling on a motion to dismiss for lack of personal jurisdiction (citing *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n.2 (9th Cir. 1977)).[3] On the basis of

---

[3] We disagree with the Dissent's view of *Data Disc, Inc*. Dissent, ¶¶ 56-57. The Ninth Circuit in that case opined that where the jurisdictional facts are intertwined with the merits, "it is *preferable* that [a decision on the jurisdictional issues] be made at trial, where a plaintiff may present his case in a coherent, orderly fashion and without the risk of prejudicing his case on the merits." *Data Disc, Inc.*, 557 F.2d at 1285, n.2 (emphasis added). In any event, as mentioned, our own rules of procedure contemplate deferring such a ruling until trial. M. R. Civ. P. 12(i). "Of course, at any time when the plaintiff avoids a preliminary motion to dismiss by making a prima facie showing of jurisdictional facts, he must still prove the jurisdictional facts at trial by a

13

the jurisdictional record, we conclude that the jurisdictional facts are so intertwined with the merits that a decision on the jurisdictional issues depends on a decision of the merits.[4] Whether Continental is subject to jurisdiction in Montana depends on whether Buckles is able to prove, under one or more of the *Beckman* exceptions, that it may be held liable for the torts, if any, of its independent contractors. If one of those exceptions applies, the duty to Zachary arises from Continental's oversight of the North Dakota well that it managed from its Sidney office in Montana and thus supplies the necessary "affiliation between the forum and the underlying controversy." *Tackett*, ¶ 19.

¶25    We therefore conclude that the evidence was sufficient at this juncture to withstand Continental's motion to dismiss for lack of a suit-specific connection between its Montana business transactions and Buckles's claims in this case. Whether Continental may be held accountable for the alleged failures of its independent contractor(s) is "the very controversy" that also would establish jurisdiction. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780. If Buckles in fact is able to demonstrate one or more of the *Beckman* exceptions, Continental may be subject to personal jurisdiction in Montana under Rule 4(b)(1)(A) based on its liability for tortious conduct, if any, by its independent contractor or contractors.

---

preponderance of the evidence." *Data Disc, Inc.*, 557 F.2d at 1285, n.2. Our Opinion today holds only that Buckles's jurisdictional evidence met the prima facie showing.

[4] The District Court denied Buckles's request to wait until trial to determine its jurisdiction. It held that the jurisdictional facts were "'not so enmeshed with the merits' of the case that the issue of Continental's personal jurisdiction in Montana should not be determined prior to trial." On de novo review of the jurisdictional issue, we disagree.

14

¶26 Because personal jurisdiction potentially is conferred by Montana's long-arm statute, we consider whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice embodied in the Due Process Clause of the Fourteenth Amendment. *Ford Motor Co.*, ¶ 10. The primary focus of the due process inquiry "is the defendant's relationship to the forum State." *Ford Motor Co.*, ¶ 12 (quoting *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1779). We consider whether: "(1) the nonresident defendant purposefully availed itself of the privilege of conducting activities in Montana, thereby invoking Montana's laws; (2) the plaintiff's claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of personal jurisdiction is reasonable." *Ford Motor Co.*, ¶ 12 (citing *Simmons*, 206 Mont. at 276, 670 P.2d at 1378). If the plaintiff demonstrates that the defendant purposefully availed itself of the privilege of conducting activities in Montana, "a presumption of reasonableness arises, which the defendant can overcome only by presenting a compelling case that jurisdiction would be unreasonable." *Ford Motor Co.*, ¶ 12 (citing *B.T. Metal Works v. United Die & Mfg. Co.*, 2004 MT 286, ¶ 34, 323 Mont. 308, 100 P.3d 127).

¶27 "A nonresident defendant purposefully avails itself of the benefits and protections of the laws of the forum state when it takes voluntary action designed to have an effect in the forum." *B.T. Metal Works*, ¶ 35. "The defendant that invokes the laws of the forum state by purposefully availing itself of the privilege of conducting activities within the forum should reasonably anticipate being haled into court in the forum state, and the exercise of jurisdiction over such a defendant is fundamentally fair."

15

*B.T. Metal Works*, ¶ 35. As discussed above and set forth in more detail in *Buckles I*, Continental's extensive business activities in Montana demonstrate that it purposefully availed itself of the privilege of conducting activities within this state. We conclude that, should Buckles prove the suit-specific connection through application of *Beckman*, requiring Continental to defend in Montana would not offend traditional notions of fair play and substantial justice as embodied in the due process clause. Once a plaintiff demonstrates that a defendant has purposefully availed itself of such privilege, the presumption of reasonableness arises. In that case, "we need not address the remaining elements in determining whether the exercise of jurisdiction comports with due process." *B.T. Metal Works*, ¶ 37 (citing *Simmons Oil Corp. v. Holly Corp.*, 244 Mont. 75, 85, 796 P.2d, 189, 195 (1990)). On this record, Continental has not presented "a compelling case" that jurisdiction would be unreasonable should Buckles prove her claims. *Ford Motor Co.*, ¶ 12.

## CONCLUSION

¶28 The District Court's order granting Continental's motion to dismiss is reversed, and the case is remanded for further proceedings.


/S/ BETH BAKER

16

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE
/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON


Justice Dirk Sandefur, concurring.

¶29 Without assignment of error, the Court essentially holds that issues of fact preclude dismissal of Buckles's complaint at this juncture under the liberal standard of M. R. Civ. P. 12(b)(2), as applied to Rule 4(b)(1)(A). I concur in that ultimate holding but, for the following reasons, would more affirmatively hold that Buckles has shown sufficient facts for exercise of Montana long-arm jurisdiction under M. R. Civ. P. 4(b)(1)(A) and that the District Court erroneously concluded to the contrary.

¶30 Exercise of specific long-arm personal jurisdiction over a nonresident is a combined function of state law under M. R. Civ. P. 4(b)(1) and Fourteenth Amendment due process under the United States Constitution. *B.T. Metal Works. v. United Die & Mfg. Co.*, 2004 MT 286, ¶ 16, 323 Mont. 308, 100 P.3d 127; *Simmons*, 206 Mont. at 271-73, 670 P.2d at 1376-77. If specific jurisdiction over a nonresident is lacking under M. R. Civ. P. 4(b)(1), the analysis ends and Montana courts "must decline jurisdiction" without consideration of federal due process requirements. *Simmons*, 206 Mont. at 272, 670 P.2d at 1376. Under M. R. Civ. P. 4(b)(1)(A), specific personal jurisdiction exists over any individual who is the subject of a "claim for relief *arising from*" the individual's "transaction of *any* business within Montana." (Emphasis added.) Thus, the limited scope

17

of inquiry under Rule 4(b)(1)(A) is whether the claim at issue *arises from any* substantial business activity carried on by the nonresident in Montana. *See* M. R. Civ. P. 4(b)(1)(A); *Grizzly Sec. Armored Express, Inc.*, ¶ 23.

¶31 Here, the District Court narrowly focused on facts that, in isolation, would weigh against exercise of specific jurisdiction, e.g.: (1) Continental contracted with an independent contractor to perform the actual on-site tank-gauging and flow rate monitoring on the North Dakota well site; (2) Continental did not involve subcontract employees in safety meetings and training provided to its own employees; (3) Continental did not specify or provide safety equipment for use by subcontract employees; and (4) Continental expected that subcontractors, and their employees, would independently have the safety training and equipment necessary to safely perform assigned subcontract work. Based on those isolated facts, the District Court essentially concluded that Buckles's asserted claims did not arise from any Continental business activity in Montana but, rather, from "alleged unsafe worksite and events," and related safety training and equipment inadequacies, in North Dakota.

¶32 As noted by the Majority, a non-resident does not subject itself to Montana specific jurisdiction under M. R. Civ. P. 4(b)(1)(A) merely by communicating and entering into a contract with a Montana resident. *See Cimmaron Corp.*, ¶¶ 14-15 (citing *Edsall Constr. Co.*, 246 Mont. at 382, 804 P.2d at 1042). Two Montana cases illustrate the point.

¶33 In *Cimmaron*, a Montana corporation contracted with a non-resident Pennsylvania corporation for the Pennsylvania corporation to serve as its Montana collections agent. *Cimmaron*, ¶¶ 4-5. The contract resulted from preliminary interstate communications and

18

a one-time trip to Montana by the principal in the Pennsylvania corporation to negotiate the terms of the collection agency contract and an ancillary contract for the principal's father to buy the Montana corporation's accounts receivable. *Cimmaron*, ¶¶ 4-5 and 13.

¶34   Noting that interstate communications regarding a contract "to be performed in another state" are insufficient alone for specific personal jurisdiction under M. R. Civ. P. 4(b)(1)(A), we affirmed the district court's dismissal of various contract and related tort claims against the various non-resident defendants because (1) their "sole contacts with Montana" were contracts calling for the non-resident(s) to provide or perform the subject services in another state and (2) the alleged breaches of duty were based on conduct that occurred outside Montana. *Cimmaron*, ¶¶ 14-15, 20-21 (emphasis omitted).  We held that the underlying contract, and related interstate communications, with the Montana company were insufficient alone to establish specific long-arm jurisdiction under either Rule 4(b)(1)(A) (transaction of business in Montana) or Rule 4(b)(1)(B) (commission of act resulting accrual of a tort in Montana) absent additional evidence indicating that the asserted breach of contract duty "arose from business . . . transacted [by the non-resident] within Montana." *Cimmaron*, ¶¶ 16-21 (emphasis omitted).

¶35   In contrast, in *Nelson v. San Joaquin Helicopters*, 228 Mont. 267, 742 P.2d 447 (1987), a Montana resident contracted by phone with a California company to repair his helicopter in California, upon delivery from Montana. *Nelson*, 228 Mont. at 268-69, 742 P.2d at 447-48.  Due to the prohibitive cost of repair, Nelson and the company later agreed by phone that the company would buy the helicopter and make installment payments on the purchase price under a promissory note from the company to Nelson, but

19

with the actual payments to be made on behalf of the company by a third-party Montana company, in satisfaction of a debt owed to the California company, under a separate agreement between the companies. *Nelson*, 228 Mont. at 268-69, 742 P.2d at 448.[1] When the Montana company failed to make the required payments to Nelson on behalf of the California company, Nelson sued the California company in Montana on the promissory note. *Nelson*, 228 Mont. at 269, 742 P.2d at 448. In contrast to the non-resident's lack of claim-related contact in Montana in *Cimmaron*, we held that the California company had sufficient claim-related contacts with Montana to establish jurisdiction under M. R. Civ. P. 4(b)(1)(A) based not only on its contract and related interstate communications with Nelson, but also on its: (1) use of the Montana company as Nelson's Montana payor; (2) ongoing business relationship with the Montana company; and (3) prior transaction-related debt collection attempts against the Montana company, which in turn resulted in the Montana company's claim-related relationship with Nelson. *Nelson*, 228 Mont. at 272, 742 P.2d at 450.

¶36 Here, in contrast to the lack of claim-related business contact with Montana in *Cimarron*, there is evidence, however disputed, that in addition to its significant business operations in Montana, Continental also had substantial claim-related business contact with the North Dakota well site *from* Montana. As recognized by the Court, Continental maintained and exercised overall management and supervisory control over daily operations at the North Dakota well site from its office in Sidney, Montana. Regardless of

---

[1] The Montana company's debt to the California company related to a recent settlement of a contract dispute in which Nelson was not involved. *Nelson*, 228 Mont. at 268-69, 742 P.2d at 448.

the fact that it contracted out for third-party performance of the on-site flow monitoring and tank-gauging operations, there is evidence that Continental maintained the right and authority to set the flow rates and to determine and specify the standards of performance of the independent contract work.

¶37 Moreover, the pertinent contract language in the contract between Continental and BH Flowtest went no further than assigning the specified contract work to BH, providing that BH agreed "to comply with all [applicable] laws, rules, and regulations," and stating BH's acknowledgment that Continental would "rely upon" its representation that all BH "employees and agents have been trained to follow all applicable laws, rules, and regulations and work safely." Nothing in the contract language constituted a deferral or delegation of site safety responsibility by Continental to BH Flowtest or its subcontractors. Nor did it effect or manifest an assumption of that responsibility by BH Flowtest. Against the backdrop of that limited contract language, there is evidence that Continental retained ultimate authority and control over the well site, ensured that contractors complied with basic safety requirements, and ensured that both its employees and contractors had required personal safety equipment. The District Court's narrow focus on the situs of injury and chain of independent contractors separating Continental therefrom overlooks Buckles's complaint allegations under the liberal standard of M. R. Civ. P. 12(b)(2), as well as the supplemental evidentiary basis, however slim at this juncture, that could conceivably support a negligence claim that Continental was either directly liable for the injury, based on its retention of Montana control over the North Dakota well site operations and

21

conditions,[2] or vicariously liable based on a nondelegable duty of care arising from the alleged abnormally dangerous activity or peculiar risk of harm at issue.[3]

¶38    Buckles's complaint specifically alleges, *inter alia*, that:

> Oil drilling and its associated activities [including] manual tank gauging is an inherently dangerous activity and it was readily ascertainable to [Continental, et al.,] that manual tank gauging of crude oil production tanks would pose peculiar risks to all involved, as well as, dangers special . . . and inherent . . . and that adequate precautions were required against recognized hazards that were causing or likely to cause death or serious physical harm [including] overexposure to hydrocarbon vapors.
>
> [Continental, et al.,] knew of hazards associated with manually gauging crude oil production tanks and of the strict requirements for adequate and appropriate air monitoring equipment, as well as training regarding overexposure to hydrocarbon vapors while manually gauging crude oil production tanks.

Unlike in *Cimmaron*, there is evidence that supervisory Continental employees were on-site from Montana daily, supervising and directing site operations with authority and

---

[2] *See, e.g.*, *Beckman*, ¶¶ 12, 32-39 (retained control exception to independent contractor rule—citing *Umbs v. Sherrodd, Inc.*, 246 Mont. 373, 376, 805 P.2d 519, 520 (1991) and Restatement (Second) of Torts § 414 (Am. Law. Inst. 1965) (duty of principal who delegates work to independent contractor but "retains control of any part of the work" to use reasonable care within the scope of the retained control to protect others from foreseeable risks of harm resulting from negligent acts or omissions of subcontractor and agents thereof)).

[3] Nondelegable duty is an exception to the general rule of non-liability for the tortious conduct of independent contractors and may arise from contracts for the performance of abnormally dangerous activity, contracts for the performance of activity posing a peculiar risk of harm, or statutory, regulatory, or contract duties of safety. *See, e.g.*, *State v. Silver-Bow County*, 2009 MT 414, ¶¶ 24-29, 353 Mont. 497, 220 P.3d 1115 (state vicariously liable for county negligence under state highway maintenance contract based on county breach of non-delegable state duty); *Beckman*, ¶¶ 12-28 (vicarious liability of county for independent contractor breach of county's nondelegable duty regarding inherently dangerous activity or activity posing peculiar risk of harm); *Stepanek v. Kober Const.*, 191 Mont. 430, 625 P.2d 51 (1981); Restatement (Third) of Torts: Physical and Emotional Harm § 57 cmt. a-b (Am. Law Inst. 2012); Restatement (Second) of Torts §§ 413, 416, and 427.

22

duty to detect and correct on-site safety problems. While the alleged injury occurred in North Dakota, there is ample evidence upon which Buckles could conceivably prove that the alleged breach of duty by Continental at least partially occurred in or arose from Montana based on supervisory or management decisions or omissions in Montana regarding operations, conditions, and precautions at the North Dakota well site. Thus, the essence of the District Court's conclusion that Buckles's claims do not arise from any Continental business activity in Montana but, rather, exclusively from "alleged unsafe worksite and events," and related safety training equipment inadequacies, in North Dakota is erroneous. Based on Continental's substantial claim-related contact to the North Dakota well site from Montana, the jurisdictional facts in this case are not only more analogous to those in *Nelson* than *Cimmaron,* but even more substantial, qualitatively, than those found sufficient in *Nelson*.

¶39 The proper focus of the Rule 4(b)(1)(A) inquiry is on the relevant jurisdictional facts—not facts that go to the merits of the asserted claims. *See Buckles I*, ¶ 23 (jurisdiction "should [be] determine[d] . . . only on the necessary jurisdictional facts and not on the merits of the case" (internal citation omitted)). As noted by the Majority, the threshold "jurisdictional facts are so intertwined with the merits [of Buckles's claims] that a decision on the jurisdictional issues [necessarily] depends on a decision on the merits," whether at the summary judgment stage, on proper motion at the close of the plaintiff's case at trial, or by special verdict form. M. R. Civ. P. 4(b)(1)(A) does not require Buckles to prove that all elements of the asserted claims occurred in Montana or that Montana has more significant contacts and relationship to the elements of the claims than North Dakota.

23

Rule 4(b)(1)(A) requires only that the asserted claim for relief *arose* in whole or in part *from* "*any* business [conducted by Continental] within Montana." (Emphasis added.) Regardless of whether North Dakota may have more or closer claim-related contacts, Buckles has shown that Montana also has minimally sufficient claim-related contacts under the relatively undemanding standards of M. R. Civ. P. 12(b)(2) and 4(b)(1)(A). I would thus more affirmatively hold that Buckles has alleged and shown sufficient facts to satisfy the Rule 4(b)(1)(A) requirement that that her asserted claims arose at least in part from Continental's substantial business activity in Montana.

¶40 Independent of M. R. Civ. P. 4(b)(1)(A), the Fourteenth Amendment Due Process Clause bars state courts from rendering a "personal judgment against a nonresident defendant" unless "'minimum contacts' [exist] between the defendant and the forum state," such that exercise of personal jurisdiction over the nonresident will comport with the traditional due process concepts of fairness and "substantial justice" within the limits of co-equal state sovereignty in our system of constitutional federalism. *Simmons*, 206 Mont. at 272-75, 670 P.2d at 1376-78. Exercise of specific Montana jurisdiction over a nonresident generally comports with traditional due process concepts of fairness and substantial justice if:

(1)     the nonresident has performed or engaged in some forum-related "act" or "transaction" to purposely benefit from "the privilege of conducting [business] in the forum" state, thereby subjecting itself to the law of the forum state;

(2)     claim at issue "arises out of or results from" the nonresident's "forum-related activities"; and

24

(3)     exercise of jurisdiction by the forum-state is reasonable under the circumstances.

*Simmons*, 206 Mont. at 276, 670 P.2d at 1378; *Data Disc, Inc.*, 557 F.2d at 1287. *Accord B.T. Metal Works*, ¶ 34 (citing *Simmons*, 206 Mont. at 272-73, 670 P.2d 1376-77 and *Data Disc, Inc.*, 557 F.2d at 1287); *Bristol-Myers Squibb Co.*, ___ U.S. at ___, 137 S. Ct. at 1785-86.

¶41     Here, Continental was unquestionably engaged in substantial business activities in Montana, thereby benefitting from the privilege of conducting business here and subjecting itself to our law.  As to the second due process factor, the claim at issue need only "arise out of *or relate to*" the nonresident's forum-related activities.  *Bristol-Myers Squibb*, ___ U.S. at ___, 137 S. Ct. at 1786 (internal quotation omitted—emphasis added). Regardless of whether North Dakota may have more or closer claim-related contracts, Buckles's asserted claims also clearly arise from and relate to Continental's business activities in Montana on the same grounds that specific jurisdiction exists under M. R. Civ. P. 4(b)(1)(A).

¶42     Under the third due process factor, the reasonableness of the exercise of state jurisdiction over a nonresident generally depends on: (1) the relative burden on the nonresident of having to appear and litigate in the forum-state; (2) the forum-state's interest in adjudicating the type of dispute at issue; (3) the "plaintiff's interest in obtaining convenient and effective relief" in accordance with "the  plaintiff's power [within the rules of civil procedure] to choose the forum"; (4) the "interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the

several States in furthering fundamental substantive social policies." *Simmons*, 206 Mont. at 273-74, 670 P.2d at 1377 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 564 (1980)). *Accord Bristol-Myers Squibb*, ___ U.S. at ___, 137 S. Ct. at 1786. Here, the relative burden on Continental of having to appear and litigate this dispute in eastern Montana, rather than a relatively short distance across the border in western North Dakota, will be minimal, if any. Continental has made no showing to the contrary.

¶43    Moreover, under the closely related circumstances of this case, Montana's interest in adjudicating this dispute is no less than North Dakota's interest. The interstate judicial system interest in obtaining the most efficient resolution of controversies, and the shared interest of Montana and North Dakota in furthering fundamental substantive social policies, will be equally served in Montana or North Dakota under the circumstances of this case. Finally, adjudication of this dispute in Montana will serve Buckles's interest and prerogative to choose the forum, as authorized by the generally applicable rules of civil procedure, without unfair or undue burden on Continental. Thus, adjudication of this dispute in Montana will comport with traditional notions of fairness and due process under the circumstances of this case.

¶44    Resolution of the threshold jurisdictional issue is an extremely close call based on the limited state of the lower court factual record and the standard of review for motions to dismiss under M. R. Civ. P. 4 and 12(b)(2). The liberal Rule 12 standard, set intentionally low to favor trial on the merits of genuine issues of material fact, is particularly important where, as here, the jurisdictional facts are inseparably intertwined at this early stage with

26

genuine issues of fact material to the merits of the currently-pled claims for substantive relief. Without prematurely adjudicating disputed issues of fact material to those substantive merits, these intertwined circumstances necessarily require some consideration of the conceivable factual and legal courses that this litigation may take and which may necessarily preclude a Rule 12 dismissal right out of the gate. As the factual record and claims for relief continue to evolve on the Rule 56 and trial records, the question of Montana jurisdiction will remain a live issue, at risk to Buckles upon appropriate defense motion or special interrogatory.

¶45 I concur in the ultimate holding of the Court. But, based on Buckles's well-pled complaint allegations, and the limited factual record at this stage of proceedings, I would more affirmatively hold that exercise of specific Montana jurisdiction is proper under M. R. Civ. P. 4(b)(1)(A) and the Fourteenth Amendment Due Process Clause and that the District Court thus erroneously granted Continental's motion to dismiss due to lack of personal jurisdiction.

/S/ DIRK M. SANDEFUR

Chief Justice Mike McGrath and Justice Ingrid Gustafson join in the concurring Opinion of Justice Sandefur.

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON


Justice Laurie McKinnon, dissenting.

¶46 I dissent.

¶47 I would conclude Buckles has failed to establish even a prima facie case Continental's relevant, suit-specific conduct—that Continental failed to secure a safe worksite and provide for adequate safety equipment and training—occurred in Montana. As the District Court determined:

> The "suit-related conduct" arose out of an alleged unsafe work site and events that occurred at the oil well in North Dakota, a sub-contractor that performed job-related duties in North Dakota, sub-contractor training occurring on the job in North Dakota, and sadly, the death of [Zachary] that occurred on a well-site in North Dakota.

This Court, however, concludes that Montana's long-arm statute applies because Montana's non-delegable duty doctrine provides the "necessary 'affiliation between the forum and the underlying controversy.'" Opinion, ¶ 24 (quoting *Tackett*, ¶ 19). The Court next concludes that Continental's extensive business activities in Montana make the exercise of jurisdiction over Continental reasonable. Opinion, ¶ 27. In my opinion, the Court also misapplies the reasoning in *Data Disc, Inc.*, and fails to abide by our standard of review. I disagree with these conclusions and begin by examining Montana's long-arm statute.

28

¶48 Montana's long-arm statute provides that "any person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts: (A) the transaction of any business within Montana . . . ." M. R. Civ. P. 4(b)(1).[1] Preliminarily, although Buckles was given the opportunity to present "jurisdictional" evidence, Buckles offered no evidence of contracts between Continental and Black Rock, Black Gold, or Buckles, or of any agency agreement between Continental and the other Defendants. Accordingly, Buckles has failed to present evidence that Continental acted through an "employee" or "agent" or otherwise *delegated* a non-delegable duty. Buckles contends that Continental's general oversight of the North Dakota wells was negligent respecting the safety of the workplace and provision of safety equipment and training. Importantly, Buckles has not argued that Continental delegated a non-delegable duty to an agent or employee in contravention of Montana's non-delegable duty doctrine—only this Court has.

¶49 Next, recognizing that Continental's MSA with BH Flowtest was not sufficient to invoke long-arm jurisdiction over Continental under M. R. Civ. P. 4(b)(1)(A), the Court nonetheless tethers "specific" or "case-linked" jurisdiction to Continental by applying Montana doctrinal law, which the Court concludes *may* allow for the creation of a non-delegable duty owed by Continental to Buckles. Opinion, ¶¶ 18, 24. The Court holds

---

[1] The other subsections of Montana's long-arm statute provide for jurisdiction when the "commission of any act result[ed] in accrual within Montana of a tort action," M. R. Civ. P. 4(b)(1)(B); and when the claim arises out of "the ownership, use, or possession of any property, or of any interest therein, situated within Montana," M. R. Civ. P. 4(b)(1)(C). These subsections are not applicable to the facts and neither the parties nor the Court address them.

that whether the non-delegable duty doctrine applies, thus creating case-specific jurisdiction over Continental, depends upon the application of Montana's case law, specifically the *Beckman* factors and exceptions. Opinion, ¶¶ 21, 24. Further, the Court's reasoning requires a determination that oil gauging in North Dakota is an inherently dangerous activity under Montana law. In essence this Court uses Montana doctrinal law to hail Continental into its courts under a theory that the non-delegable duty doctrine can establish suit-related conduct. Unfortunately, in doing so, the Court commingles Montana's substantive law relevant to Montana's workplaces and jurisdictional law relevant to a defendant's suit-related conduct and contacts.

¶50 The Court concludes the long-arm statute applies, without noting or providing an analysis under the relevant subsection and does not explain why Montana doctrinal law should control workplace safety at a North Dakota worksite. The Court fails to distinguish between important principles of interstate federalism underlying specific jurisdiction and principles underlying the creation of Montana doctrinal law, which are derived primarily from the jurisprudence of this Court and policies of the Montana legislature. For these reasons, I believe the Court fundamentally errs when it concludes Montana's long-arm statute confers jurisdiction over Continental via Montana's non-delegable duty doctrine. I now turn, despite this conclusion, to whether the exercise of specific personal jurisdiction over Continental comports with federal due process considerations.

¶51 Settled principles underlying personal jurisdiction consider a variety of interests, including regard for Fourteenth Amendment due process, the burden on the defendant, practical problems of litigating in the forum, and respect to limits on federalism interests.

30

"A state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918-19, 131 S. Ct. 2846, 2850-51 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)).  In order for a court to exercise specific jurisdiction over a claim, there must be an "'affiliatio[n] between the forum and the underlying controversy,' principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919, 131 S. Ct. at 2851 (internal citation omitted); *see also Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781.  The "suit" must "arise[] out of or relate[] to the defendant's contacts with the forum." *Daimler AG*, 571 U.S. at 127, 134 S. Ct. at 754 (quoting *Helicopteros Nacionales de Columbia, S. A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872 (1984)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74, 105 S. Ct. 2174, 2182 (1985).  "For this reason, specific jurisdiction is *confined* to adjudication of issues *deriving from, or connected with, the very controversy that establishes jurisdiction.*" *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (emphasis added; internal quotation marks omitted); *see also Goodyear*, 564 U.S. at 919, 131 S. Ct. at 2851 (Even though Goodyear had plants in North Carolina and regularly engaged in commercial activity there, "[b]ecause the episode-in-suit, the bus accident, occurred in France, and the tire alleged to have caused the accident was manufactured and sold abroad, North Carolina courts lacked specific jurisdiction to adjudicate the controversy," as the dispute did not arise from or relate to Goodyear's contacts with the forum.).

31

¶52   Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties. *Walden*, 571 U.S. at 284, 134 S. Ct. at 1122.  For specific jurisdiction, "a defendant's general connections with the forum are not enough."  *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781.  "A corporation's 'continuous activity of some sorts within a state' . . . 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'"  *Goodyear*, 564 U.S. at 927, 131 S. Ct. at 2856 (quoting *Int'l Shoe*, 326 U.S. at 318, 66 S. Ct. at 159).  Thus, "consistent with due process, the defendant's *suit-related* conduct must create a *substantial connection* with the forum State."  *Walden*, 571 U.S. at 284, 134 S. Ct. at 1121 (emphasis added).

¶53   As to limitations on the exercise of personal jurisdiction and principles of federalism, the "primary concern" is assessing "the burden on the defendant," which requires the court to consider the practical problems resulting from litigating in the forum and "the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question."  *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780.  Restrictions on personal jurisdiction "are more than a guarantee of immunity from inconvenient or distant litigation"; rather, "[t]hey are a consequence of territorial limitations on the power of the respective States."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294, 100 S. Ct. 559, 565 (1980).  States "retain many essential attributes of sovereignty, including, in particular, the sovereign power to try causes in their courts.  The sovereignty of each State . . . implie[s] a limitation on the sovereignty of all sister States."  *World-Wide*, 444 U.S. at 293, 100 S. Ct. at 565.

"[A]t times, this federalism interest may be decisive." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780. As the Supreme Court explained in *World-Wide*:

> Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*World-Wide*, 444 U.S. at 294, 100 S. Ct. at 565-66.

¶54 These rules, when applied to the District Court's findings and conclusions, reveal that the connection between the suit-related conduct (safety of the North Dakota well site) and the forum (Montana) must arise out of the *contacts* Continental *itself* created with Montana. The affiliation between the suit-related conduct and the forum must be substantial and is determined by the defendant's contacts which he himself has created, not by doctrinal law of the forum state. Otherwise, the jurisdictional examination diverts the inquiry from the quality of the defendant's contacts with the forum state in relation to the suit-related conduct, to an inquiry of the substance and reach of any particular state law. The Court's use of Montana's non-delegable duty doctrine to manufacture jurisdiction swallows up the protections afforded by the Due Process Clause and defeats principles of interstate federalism. Under the Court's reasoning, any business, entity, or person with a contact or connection to Montana is subject to the specific jurisdiction of Montana courts for potentially any conduct done within the fifty states or internationally, if that defendant can be brought within the reach of Montana's non-delegable duty doctrine, or, for that matter, some other Montana law.

33

¶55    Here, North Dakota and Oklahoma have significant interests in the policies and laws respecting the oil industry as conducted within the confines of each State's borders. Continental is "at home" and subject to general jurisdiction in Oklahoma; it owns the oil site in North Dakota where the accident occurred and is, therefore, subject to specific jurisdiction in North Dakota. Both North Dakota and Oklahoma offer Buckles a forum. Both states have strong sovereign interests in the welfare of their workers and business owners related to oil production in their respective states. These sovereign interests include economic interests, such as the interests of workers, oil industry jobs, and state economies; the interests of constituents; and state laws reflecting the policies of each respective legislature. While Montana too has an interest in providing access to its courts, implementing its legislative policies, and applying the jurisprudence of this Court, that interest may not unreasonably extend beyond Montana's boundaries into our sister states, unless the constitutional requirements respecting interstate federalism have been met. The Due Process Clause does not permit Montana to extend its non-delegable duty law to exercise jurisdiction and define a lawsuit arising out of a death at a North Dakota well site owned by an Oklahoma company. Here, the Due Process Clause must act to protect the interests of North Dakota and Oklahoma in not being governed by Montana's laws, just as it acted in *Ford Motor Co.* to protect the interests of Montana in its roadways. There is no evidence that Continental's Sidney office provided Buckles with faulty equipment or training, or that Buckles was injured in Montana by Continental's inaction elsewhere. Absent such evidence, the Due Process Clause, acting as an instrument of interstate federalism, requires that Montana decline to exercise specific jurisdiction in this case.

34

¶56     Beyond the errors arising from the Court's commingling of substantive and procedural law, in my opinion, the Court also misapplies the analysis of *Data Disc, Inc.* Opinion, ¶ 24. *Data Disc, Inc.*, 557 F.2d at 1285-86 n. 2, 1289 nn. 5-7, stands for the principle that a plaintiff, depending on the manner of proof set by the trial court, may be entitled to an opportunity to prove jurisdictional facts while also presenting substantive facts relevant to a trial on the merits. However, contrary to the Court's reasoning, *Data Disc, Inc.* does not stand for the proposition that a plaintiff may have *two* opportunities to present jurisdictional facts: first, during a pretrial hearing where the plaintiff is held to the same preponderance standard of proof as during trial; and then, again, during the trial. Opinion, ¶ 24. Here, Buckles has already been provided an opportunity to prove jurisdictional facts by a preponderance of the evidence. Buckles is not entitled during the trial, a second opportunity to establish jurisdictional facts by a preponderance of the evidence.

¶57     In *Data Disc, Inc.*, the district judge orally ruled there was no jurisdiction following oral argument and conflicting affidavits submitted by both parties. No findings of fact were made in the order of dismissal. *Data Disc, Inc.*, 557 F.2d at 1284. The Ninth Circuit concluded that the affidavits were in conflict regarding jurisdictional facts. However, instead of resolving the factual disputes, the Court determined that jurisdiction could be determined by reference to the standard of review. *Data Disc, Inc.*, 557 F.2d at 1285. The Court explained "the quantum of proof required to meet that burden may vary, depending upon the nature of the proceeding and the type of evidence which the plaintiff is permitted to present." *Data Disc, Inc.*, 557 F.2d at 1285. Because there is no statutory method for

35

resolving a motion to dismiss for lack of personal jurisdiction, the "mode of its determination is left to the trial court," and the "limits which the district judge imposes on the pre-trial proceedings will affect the burden which the plaintiff is required to meet." *Data Disc, Inc.*, 557 F.2d at 1285. Accordingly,

> If the court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss. Any greater burden—such as proof by a preponderance of the evidence—would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavits and supporting materials.

*Data Disc, Inc.*, 557 F.2d at 1285. Conversely, if the "pleadings and other submitted materials raise issues of credibility or disputed questions of fact with regard to jurisdiction, the district court has the discretion to take evidence at a *preliminary hearing* in order to resolve the contested issues." *Data Disc, Inc.*, 557 F.2d at 1285 (emphasis added). "In this situation, where plaintiff is put to his full proof, plaintiff must establish the jurisdictional facts by a preponderance of the evidence, just as he would have to do at trial." *Data Disc, Inc.*, 557 F.2d at 1285. "Where the jurisdictional facts are intertwined with the merits, a decision on the jurisdictional issues is dependent on a decision of the merits. In such a case, the district court could determine its jurisdiction in a *plenary pretrial proceeding*." *Data Disc, Inc.*, 557 F.2d at 1285 n. 2 (emphasis added).

¶58    Here, Buckles had a chance to establish jurisdiction at a "plenary pretrial proceeding" at which Buckles ought to be held by this Court, under the authority of *Data Disc, Inc.*, to the same burden of proof as if it were a trial on the merits. In my

36

opinion, Buckles has failed to meet the jurisdictional burden of proof and should not be given a third opportunity during trial to prove jurisdiction.

¶59    Finally, the Court also fails to adequately abide by the standard of review. Here, "[w]e review a district court's findings of fact and conclusions of law regarding personal jurisdiction to determine whether the findings are clearly erroneous and whether the conclusions are correct." *Buckles I*, ¶ 9. The Court recites many of the District Court's findings of fact and acknowledges that the owner and operator of a well complex is not liable for any torts committed by its independent contractors. Opinion, ¶ 21. Nowhere has the Court pointed to findings made by this District Court, or even the previous trial court, which were clearly erroneous or applied incorrect conclusions of law. Despite this, the Court charters Buckles through a *Beckman* analysis and offers a third opportunity to prove jurisdiction. Opinion, ¶¶ 21-24. It is the responsibility of the plaintiff to prove jurisdiction and establish its own trial strategy. Here, the Court suggests Continental may have a non-delegable duty despite Buckles never having advanced such an argument themselves. Indeed, Continental has not offered into evidence any of the contracts which would establish an agency, subcontractor, or employee relationship. I would abide by the standard of review and, where the trial court has not erred according to that standard of review, this Court must not remand to provide the plaintiff—who carries the burden of proof—a third opportunity to meet that burden.

¶60    To reiterate, the District Court concluded that every relevant instance of Continental's suit-related conduct occurred in North Dakota. Not a single fact regarding Continental's actions arose in Montana. Just as in *Goodyear*, it is irrelevant that

37

Continental maintained an office in Sidney, Montana, because the episode-in-suit arose out of an alleged unsafe work site and events that occurred at an oil well in North Dakota, a sub-contractor that performed job-related duties in North Dakota, training for sub-contractors occurring on the job in North Dakota, and Zachary's accident, and tragic death, that occurred on a well site in North Dakota. Given these facts, I would hold that Buckles has failed to establish even a prima facie case that any of Continental's relevant, suit-specific conduct occurred in Montana.

¶61 In my opinion, these proceedings raise significant concerns over interstate federalism. Application of Montana law to assert specific jurisdiction on behalf of a Montana plaintiff infringes upon the sovereignty of North Dakota and Oklahoma where the suit-related conduct arises out of an accident on a North Dakota oil well site, where the defendant is a resident of Oklahoma, and where no jurisdictional facts exist showing that Continental oversaw the safety of the well site from its Sidney office in Montana. I dissent from the Court's decision concluding otherwise, and from its strained efforts to accommodate Buckles in proving their case.

_____
/S/ LAURIE McKINNON